IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

MARY K. LYON,                              )
                                           )
            Plaintiff,                     )
                                           )
vs.                                        )        Civil Action No. 2:08-cv-394-WHA
                                           )
WILLIAM ROBERT ASHURST, et al.,            )                    (WO)
                                           )
            Defendant(s).                  )

**MEMORANDUM OPINION AND ORDER**

**I. INTRODUCTION**

        This cause is before the court on a Motion to Dismiss (Doc. # 9) filed by Defendants

William Robert Ashurst ("Ashurst"), John Thomas Hall ("Hall"), Randall A. Estes ("Estes"), and

D. Joe McInnis ("McInnis"), (collectively "Defendants")[1], on June 23, 2008.  The Plaintiff, Mary

K. Lyon ("Lyon"), originally filed a Complaint against the Defendants on May 28, 2008,

bringing various claims based on alleged retaliation for her filing of a grievance concerning a co-

worker's allegedly violent conduct, and for her testimony in another co-worker's grievance

hearing.

        First, Lyon alleged that the Defendants, in their individual and official capacities,

"conspired to interfere with the civil rights of the Plaintiff by intimidating [and] retaliating

_____

        [1]  Another defendant, Jackie Graham ("Graham"), has retained separate counsel, and was
not a part of the motion to dismiss.  She has been named as defendant in her individual capacity
and in her capacity as Personnel Director for the Alabama Department of Transportation
("ALDOT").  To the extent the court's analysis applies to her as a non-movant, this court will
reflect it below.  For the sake of simplicity, however, this court will refer to all of the defendants,
minus Graham, collectively, as "Defendants," and refer to Graham specifically when
appropriate.

1

against [her] for her participation in a grievance procedure," claiming violations of 42 U.S.C. §

1985(2) and (3), as well as violations of her equal protection rights and due process rights under

the Fifth and Fourteenth Amendments. (Count I, Compl. ¶¶ 35-37.)  Second, Lyon alleged a

cause of action under 42 U.S.C. § 1983 for violations of her First, Fourth, Fifth, Seventh, and

Fourteenth Amendment due process rights and rights to protected speech in the form of her

grievance filing and testimony (Count II).  She also claimed a violation of her constitutional

rights to privacy under the First, Fourth, Fifth, Seventh and Fourteenth Amendments when

Ashurst put up a sign saying "MENTAL WARD" on his office door and in his office window.

(Count II).  Third, Lyon alleged claims of libel, slander, and defamation for the aforementioned

sign. (Count III).  Fourth, Lyon alleged the tort of outrageous conduct based on all of the above

conduct. (Count IV).  Finally, Lyon alleged that the Defendants violated:

> state constitutional guarantees incorporating the First, Fourth, Fifth, Seventh, and
> Fourteenth Amendments to the United States Constitution of freedom of expression,
> protected speech, invasion of privacy, trial by jury, trials by tribunals and/or hearing
> officers and administrative hearings, as well as obstructed justice associated in the
> procedural guarantees of those hearings, as well as violated administrative
> procedures acts designed to incorporate said proceedings and due process rights of
> Plaintiff.

(Compl. ¶ 56.) (Count V).

　　　In her Response to the Motion to Dismiss ("Response Brief"), Lyon conceded several of

her claims.  She conceded that her Fourth, Fifth and Seventh Amendment claims did not apply to

any § 1983 claims.[2] (Resp. Br. at 8.)  She further conceded that her Fourteenth Amendment equal

---

[2]  In her concession, Lyon "submits that the invasion of privacy claim asserted as a Fifth
Amendment due process claim should have been plead as a state tort claim." As the Defendants
point out, to the extent that Lyon attempts in this sentence to amend her claim and reconstitute it
as a state invasion of privacy claim, her response brief is not the proper method to do so. (Reply
Br. at 1-2.)  Regardless, Lyon later concedes, as this court notes above, that any state law claim

protection claim is not appropriate under 42 U.S.C. § 1983, and explicitly "confines her [§ 1983] argument to the retaliatory actions undertaken by the Defendants, jointly and severally, in violation of Plaintiff's constitutional First Amendment protected free speech claim. (*Id.* at 9.) She conceded that any state invasion of privacy claim premised upon posting of the "Mental Ward" sign would be time-barred by the statute of limitations.  Lyon also concedes all claims against the Defendants in their official capacities.  Finally, Lyon concedes all state constitutional claims (Count V).[3]

Setting aside Lyon's conceded claims, this court will address the remaining claims.  First, there are Lyon's claims under 42 U.S.C. § 1985(2) and (3), and her claims with respect to violation of the *Reynolds* consent decree (Count I).  Second, there is Lyon's § 1983 claim for violation, through retaliation, of her First Amendment right to protected speech (Count II).  Third, there are her state law claims of defamation, libel, and slander (Count III).  Finally there is her state law claim of the tort of outrage (Count IV).  This court will address these remaining claims below.

## II. STANDARD OF REVIEW

---

premised upon invasion of privacy for the posting of the "Mental Ward" sign would be time barred by the statute of limitations. (Resp. Br. at 9.)

[3] Count V of Lyon's complaint, among other parts of her complaint, is exceedingly unwieldy, leaving much speculation as to the exact causes of action being pled and the factual allegations to support them. *See, e.g., Byrne v. Nezhat*, 261 F.3d 1075, 1129-31 (11th Cir. 2001); *Ebrahimi v. City of Huntsville Bd. of Educ.,* 114 F.3d 162, 164 (11th Cir. 1997).  The court construes Count V, however, to be limited to the various federal constitutional rights listed, to the extent that they are incorporated into and guaranteed by the Alabama constitution. (*See* Compl. ¶¶ 56-57.)  The Court therefore construes Lyon's complete concession of all "state constitutional claims," (Resp. Br. at 22), as a complete concession of Count V in full.

The court accepts the plaintiffs' allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73, 104 S. Ct. 2229, 81 L. Ed. 2d 59 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993). To survive a motion to dismiss, a complaint need not contain "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, -- U.S. --, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974. The factual allegations, however, "must be enough to raise a right to relief above the speculative level." *Id.* at 1965.

### III. FACTS

The facts as alleged in Lyon's complaint are as follows:

At the time complained of, Ashurst was Section Engineer and Supervisor of the Right-of-Way Section of the Alabama Department of Transportation ("ALDOT"). Lyon was hired on or about February 5, 2005 as Ashurst's secretary, and obtained merit system status on August 4. Ashurst also supervised Hall, one of Lyon's co-workers who, in turn, supervised other employees within Lyon's shared office space. On or about August 10, 2005, Lyon heard Hall complain, in a meeting with Ashurst, that he wanted Lyon fired. Lyon nevertheless received a pay raise in September 2005.

During the fall of 2005, Lyon received permission from Ashurst to participate in counseling in the Employee Assistance Program ("EAP") to help her deal with some recent medical problems. To Lyon's knowledge, the only two people who knew of her application to and participation in the program were Ashurst and an employee of the Personnel Division of ALDOT.

4

On or about December 22, 2005, an incident described only as "violent" occurred between Lyon and Hall, and Lyon consequently filed a grievance against Hall for violence in the workplace. (Compl. ¶ 10.)  The next day, Ashurst called Lyon into his office and told her that she "was out of line and needed to chill" concerning the incident with Hall the previous day. (*Id.* ¶ 11.)  Later that morning, Lyon was given her mid-appraisal performance review; but no rating or appraisal score was given to her at that time.  A previous appraisal, given at the end of her probationary period on July 28, 2005, had rated her a 32.5 for responsibility, reflecting her work as "Exceeds Standards," and rating her "Satisfactory" in attendance, punctuality, cooperation with co-workers and compliance with the rules.  The probationary appraisal also noted that Lyon had not received any warnings, reprimands or suspensions as of the end of her probationary period.

On or before the time in January 2006 when Lyon had filed her grievance against Hall with the Division's Equal Employment Opportunity ("EEO") representative, another employee in her division, Ms. Linda Lee ("Lee"), also filed a grievance against Hall.  Lyon was subpoenaed as a witness for Lee's administrative hearing.  When Ashurst learned that Lyon had been subpoenaed, he soon thereafter called Lyon into his office and attempted to persuade her not to testify or answer the subpoena.  Ashurst told her that he and Hall would both "really appreciate it if she did not attend the hearing," and would "consider it a personal favor." (Compl. ¶ 12.)  He further advised her that he had checked it out, and that she was not legally obligated to go to the hearing; Lyon replied that she had been subpoenaed, and that she felt required to attend.  Lyon alleges that she feared, from the tone of Ashurst's voice, that he would retaliate if she complied with the subpoena.  That same week, an ALDOT attorney telephoned Lyon at

work, explained that he was an attorney for the Lee hearing, and also attempted to dissuade her from attending the hearing.

On or about January 20, 2006, after having learned of Lyon's grievance and of the subpoena, Ashurst affixed to the outside of his office door, facing the hallway, a framed sign that stated in all capital letters, "MENTAL WARD."  As Lyon passed a group of male co-workers, "she heard them chuckling and snickering as Ashurst told them that the 'powers that be' ha[d] told him that he might get into trouble" for affixing such a sign to his hallway door. (Compl. ¶ 13.)  Ashurst then removed the sign and relocated it in his window sill pointing outward into the hallway, so that passersby could still see the sign through his office window glass.  Plaintiff alleges that she believes the sign was placed there by Ashurst because he knew that she had earlier sought counseling through the EAP, and attempted to discredit and intimidate her.  On or about January 25, 2006, Lyon received a letter stating that ALDOT's Motion to Quash the Subpoena for her to testify in the Lee hearing was denied.  Lyon understood this to mean that she was required to attend.

On or about January 31, 2006, Lyon attended the Lee hearing. When she arrived, she was told, and without prior notice, that her own grievance was being combined with Lee's, and that she was going to have to testify as to Lee's grievance and her own grievance on that same day. Due to the lack of prior notice, Lyon was unprepared.  The hearing officer at the grievance proceedings issued an order cautioning against retaliatory action being taken against any of the witnesses to the case.

On February 7, 2006, Estes, Section Supervisor of Ashurst, met with Ashurst and Hall in Ashurst's office, where Hall angrily kicked a chair over a perceived verbal reprimand from Estes

for his "violent incident" with Lyon.  As Estes attempted to calm Hall down, Lyon overheard him say, "I don't make the rules."   About one day later, Lyon overheard Hall ask Canderia Kyser ("Kyser") to begin keeping a list of documentation that could be used against Lyon.  The next day, Lyon reported to Doug Furlough, the EEO representative, that she was unable to report incidents of harassment to her supervisor, Ashurst, because of his participation in those incidents, and asked him if she could report to another supervisor or directly to the ALDOT main office.  She further informed Furlough of the comment between Hall and Kyser.  The next day, on or about February 10, Furlough spoke with Kyser, after which Kyser informed Lyon that there were "bad, evil spirits in this place."  On or about that same day, Ashurst falsely accused Lyon of making a mistake on his leave slip.

From about February 23 to February 27, 2006, Lyon took a typing test and a written exam, and spoke with officers in the ALDOT Compliance Office in an attempt to transfer out of her Division into an ASA III position.  On or about March 10, 2006, Ashurst issued Lyon a written reprimand, her first during her thirteen-month employment period as his secretary, for minor infractions blown out of proportion, which included incidents that had occurred over two months before.  Lyon was then advised that further disciplinary actions could lead up to and include suspension or termination.  Lyon grew upset upon receiving the reprimand, and requested a leave slip, which Ashurst granted.

On or about March 27, 2006, Lyon turned in a two-week notice of resignation, citing health problems that would require more recovery time than her remaining accumulated leave.  On or around March 30, 2006, Lyon was diagnosed with a hernia, which she attributes to the

December 2005 violent incident with Hall.  Lyon filed a workmen's compensation claim on or around April 3, 2006, which was denied.

On April 13, 2006, one day prior to Lyon's scheduled last day of work, Ashurst came to her desk, appeared angry, and told her that there was no reason for her to come into work the next day.  He told Lyon that as soon as she cleaned out her desk she was not to return.  On April 20, 2006, Ashurst sent a memo to Estes, requesting that Lyon's personnel file be marked "Do Not Re-Hire," stating as grounds Mrs. Lyon's "disruptive, argumentative, and confrontational behavior.  She definitely was not an asset to the work force."  Subsequently, an Employee Performance Appraisal ("performance appraisal"), purportedly covering the period from June 1, 2005 to June 1, 2006, was submitted with Ashurst's signature, dated May 23, 2006.  Estes, the reviewing supervisor, signed and dated the form May 24, 2006.  The appraisal itself was date-stamped May 30, 2006.  The appraisal resulted in an 11.8 appraisal score, indicated that she "[p]artially meets standards" with respect to her "Work Section," indicated "satisfactory" on attendance and punctuality, and "unsatisfactory" on "cooperation with co-workers and compliance with the Rules."  Moreover, a recommendation for personnel action dated April 14, 2006 and filed June 28, 2006 by the State Personnel Department stated, "Not Recommended for Re-Hire Due to Disruptive Behavior Issues," and was approved by "all levels."  The form ("'Do Not Hire' classification") was signed by Estes, the appointing authority McInnes, and ALDOT Personnel Director Graham.

After leaving her job with ALDOT, Lyon interviewed for approximately fifteen jobs with the State of Alabama.  In June 2006, she was turned down for the ASA III transfer, and learned that it was because she was considered a "Do Not Rehire."  Lyon called the State Personnel

Department and was informed that the only way to change this classification in her file was to convince her past supervisor to change it.  When she contacted Ashurst for this purpose, he told Lyon that she didn't work there anymore and that he didn't have to talk to her.  Lyon then called the ALDOT Personnel Department to request advice on how to alter her "Do Not Rehire" classification, and the secretary there simply told Lyon to document the call.  It wasn't until April 3, 2008 that Lyon discovered she could look into her own file, after job interviewers with the Alabama Medicaid Agency informed her that she was allowed to do so.  On April 8, 2008, Lyon filed a letter of response to the May 30, 2006 unsatisfactory performance appraisal.

Lyon alleges that her failure to be hired by numerous state agencies is a direct result of retaliatory actions taken against her by the Defendants in placing the "Do Not Rehire" classification and negative performance appraisal in her file.  She alleges that the Defendants retaliated against her because she filed a grievance and testified in the Lee hearing.  Lyon further alleges that the grievance procedures that she followed were formulated pursuant to a Court Order in *Reynolds v. ALDOT*, 2:08-cv-665-MHT, and by retaliating against her for filing a grievance and for testifying in the Lee grievance hearing, they violated the Consent Order in that case.

**IV. DISCUSSION**

Of Lyon's originally alleged claims, the following claims remain: 42 U.S.C. § 1985(2) and (3) (Count I), Violation of the Court Order (Count I), § 1983 violation of Lyon's First Amendment right to protected speech (Count II), defamation (Count III), and the tort of outrageous conduct (Count IV).  The court will address each of Lyon's claims in turn.

A. Conspiracy to retaliate under 42 U.S.C. § 1985(2) and (3) (Count I)

Title 42, Section 1985 of the United States Code prohibits conspiracies to interfere with civil rights. 42 U.S.C. § 1985 (2006).  There are three subdivisions of § 1985. *Id.*  No discussion of the first subdivision is necessary, because Lyon alleges no claim under § 1985(1).

i.  42 U.S.C. § 1985(2)

Section 1985(2) has two parts.  The first part of § 1985(2) prohibits, in relevant part, two or more persons from conspiring:

> to deter, by force, intimidation, or threat, any party or witness in *any court of the United States* from attending such court, or from testifying to any matter pending therein, freely, fully, and truthfully, or to injure such party or witness in his person or property on account of his having so attended or testified . . . .

*Id.* (emphasis added).  The second part of § 1985(2) prohibits two or more persons from conspiring:

> for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, *with intent to deny to any citizen* the equal protection of the laws, or to injure him or his property for lawfully enforcing, or attempting to enforce, the right of any person or class of persons, to the equal protection of the laws . . . .

*Id.* (emphasis added).  Lyon claims that the Defendants, by placing the "Do Not Re-hire" classification and poor performance appraisal in her file, and by ratifying or approving such placement, conspired to interfere with her civil rights in violation of § 1985(2).

In their Motion to Dismiss, the Defendants make four arguments against Lyon's § 1985(2) claim. (Mot. to Dismiss at 6-8.)  First, Defendants argue that Lyon fails to specifically allege an agreement between members of the alleged conspiracy as opposed to "vague and conclusory" allegations. *Id.* at 6-7 (*citing Bailey v. Bd. of Cty. Comm'rs. Of Alachua Cty.,* 956 F.2d 1112, 1122 (11th Cir. 1992); *Mickens v. Tenth Judicial Circuit,* 181 Fed. Appx. 865, 876 (11th Cir. 2006)).  Second, Defendants argue that Lyon's claim is foreclosed by the intracorporate conspiracy doctrine. *Id.* at 7 (*citing Dickerson v. Alachua Cty. Comm'n*, 200 F.3d

10

761, 767-78 (11th Cir. 2000); *Chambliss v. Foote*, 562 F.2d 1015 (5th Cir. 1977) (*per curiam*)).

Third, they argue that the first part of § 1985(2) is not satisfied, because Lyons testified at an

administrative grievance hearing, and not a federal court.  Fourth, they argue that the "intent

language under the second part of § 1985(2) "requires an allegation of class-based animus in

order to state a claim." *Id.* at 8 (*citing Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)).

      In response to the first argument, Lyon notes that she pled facts that the Defendants

violated the procedures incorporated into the *Reynolds* consent decree, and alleged conspiracies

to violate her First Amendment rights. (Resp. Br. at 9-10.)  As the Defendants note in their

Reply, however, this does not squarely address their argument that Lyon failed to specifically

allege an agreement between the Defendants. (Reply Br. at 2-3.)  In response to the second

argument, Lyon argues that the Defendants were acting outside the line and scope of their

employment by intentionally pursuing a personal agenda, and thus the intracorporate conspiracy

doctrine does not apply. (Resp. Br. at 10-11.)  Lyon misinterprets the third argument by arguing

in response that retaliation for participation in a hearing violates her United States First

Amendment constitutional rights, when the Defendants' argument pertained to the scope of the

first part of § 1985(2), and not whether the allegedly retaliatory act violated a constitutional

right.  Finally, Lyon does not independently and specifically address the fourth argument about

the animus requirement, other than to reiterate several times throughout her Response that the

Defendants' actions were "wanton, intentional and unconstitutional retaliatory actions" (Resp.

Br. at 11), undertaken "maliciously and in bad faith," (*id.* at 18) and wantonly and intentionally

(*id.* at 19).

This court finds that Lyon fails to state a sufficient claim under the first part of § 1985(2) because an administrative commission hearing does not count as a "court of the United States," which limits the scope of the first part of 1985(2) to federal courts. *Seeley v. Brotherhood of Painters,* 308 F.2d 52, 58 (5th Cir. 1962)[4]; *see also Morast v. Lance*, 807 F.2d 926 (11th Cir. 1987), *overruled on other grounds by Haddle v. Garrison*, 525 U.S. 121 (1998); *Carter v. Church*, 791 F. Supp. 298 (M.D. Ga. 1992) (submitting affidavit to EEOC not protected by § 1985(2)); *Foster v. Pall Aeropower Corp.,* 111 F. Supp.2d 1320, 1323 (M.D. Fla. 2000) (holding that § 1985(2) does not protect against conspiracies to obstruct justice in retaliation for participation in administrative proceedings, but rather only federal proceedings).

To allege a sufficient claim under § 1985(2), therefore, Lyon must allege a sufficient claim under the second part of § 1985(2).  The Eleventh Circuit has held that the second part of § 1985(2), prohibiting conspiracies to deny citizens the equal protection of the laws, is not limited to federal courts like the first part. *Kimble v. D.J. McDuffy*, *Inc.*, 454 U.S. 1110, 1110 (1981) ("The second part of § 1985(2) creates a similar cause of action for interference with state proceedings."); *Chavis v. Clayton Cty. Sch. Dist.,* 300 F.3d 1288, 1293 (11th Cir. 2002) (holding that "race-based retaliation against witnesses who truthfully testify in state criminal proceedings" included within second part of § 1985(2)).[5]  The Defendants argue, however, that the second part

---

[4]  In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions that the former Fifth Circuit rendered prior to October 1, 1981.

[5]  This court recognizes that *Chavis* is easily distinguishable from this case, in that it involved participants in state criminal proceedings, and not administrative civil proceedings. Although the parties have not cited, and this court has not found, any case directly on point, there is no reason to believe that the second part of § 1985(2) would allow claims of retaliation against state proceeding participants but yet exclude claims of retaliation against administrative hearing

of § 1985(2) requires an allegation of "class-based animus," and that Lyon has failed to make such an allegation.

In *Griffin v. Breckenridge*, the United States Supreme Court held that, for a private conspiracy to be actionable under the equal protection language of § 1985(3), there must be a racial or otherwise class-based invidiously discriminatory motivation. 403 U.S. 88, 101-02 (1971).  This intent requirement also applies to the second part of § 1985(2). *Kimball v. D.J. McDuffy, Inc.,* 648 F.2d 340, 346 (11th Cir. June 18, 1981) (en banc) ("[T]his court has held that *Griffin*'s racial or class-based animus requirement is fully applicable to claims brought pursuant to clauses C and D of Section 1985(2)." (citations omitted)), *cert. denied,* 454 U.S. 1110 (1981); *see also Mason v. Village of El Portal*, 240 F.3d 1337, 1340 (11th Cir. 2001) (affirming dismissal of § 1985(2) claim because plaintiff "failed to establish invidiously discriminatory racial animus behind a conspiratorial decision not to reappoint him.").

Here, Lyon has failed to allege any facts beyond "the speculative level," *Twombly,* 127 S.Ct. at 1965, that the Defendants possessed a racial or class-based animus.  In paragraph 32 of her complaint, Lyon alleges that she "is a female and a member of a protected class as was Lee, her co-employee upon whose behalf the Plaintiff was subpoenaed to testify." (Compl. ¶ 32.) Although she makes several claims as to equal protection violations, claims which she later conceded as noted above, nowhere in her complaint does she allege that the Defendants were motivated to violate her First Amendment or any other rights because of her gender.  Nor does

participants.  It also finds no sufficient reason to distinguish between criminal and civil proceedings when § 1985, one of the Reconstruction civil rights acts, was designed "to be 'accorded [] a sweep as broad as their language.'" *Chavis*, 300 F.3d at 1292 (*quoting Griffin v. Breckenridge*, 403 U.S. 88, 97(1971)).

she allege any facts which would support such an inference, other than the fact that she and Lee are both female.  Lacking even a naked allegation, much less supporting factual allegations, that the purported conspiracy between the Defendants was motivated by a gender or other class-based animus—as opposed to mere aversion to Lyon's personality, for example—Lyon fails to state a claim under § 1985(2) for which relief may be granted.  Lyon's § 1985(2) claim is therefore due to be DISMISSED without prejudice.

ii. 42 U.S.C. § 1985(3)

A § 1985(3) claim, like a § 1985(2) claim, requires a racial or class-based animus. *Mason*, 240 F.3d at 1340 n.1 ("The [§ 1985(2)] claim would fail for [lack of animus] even if the trial court had allowed Plaintiff to amend it to state a claim under § 1985(3).").  For the same reasons discussed above, therefore, Lyon's § 1985(3) claim is also due to be DISMISSED.

Because this court finds that Lyon's § 1985 conspiracy claims are insufficient on the aforementioned grounds, it need not address the Defendants' other arguments.

**B. Violation of Court Order (Count I)**

Along with her § 1985 claims, Lyon includes allegations that the Defendants' conduct, in retaliating against her, violated the consent decree reached in the *Reynolds* case.  In their Motion to Dismiss, the Defendants argue that, to the extent that Lyon asserts a failure to comply with the court-mandated consent decree, her remedy should be to file a civil contempt motion with the Court, instead of improperly attempting to assert an independent private cause of action. (Mot. to Dismiss at 4.)  In response, Lyon merely argues that, if she has no claim under § 1985, then, the court should treat her claims as a contempt claim, citing authority which actually supports the Defendants' original argument that the proper remedy is a contempt motion and not a § 1983

14

claim. (Resp. Br. at 11-12 (*quoting Harrelson v. City of Millbrook,* 859 F. Supp. 1465, 1469-70

(M.D. Ala. 1994) (Albritton, J.)).)  In reply, the Defendants argue that Lyon may not reconfigure

her complaint by "amend[ing] her pleading through argument in an opposition brief to

Defendants' Motion to Dismiss." (Reply Br. at 3 (*citing Gilmour v. Gates, McDonald & Co.,* 382

F.3d 1312, 1315 (11th Cir. 2004)).)

This court agrees. *Cf. Gilmour*, 382 F.3d at 1315 ("A plaintiff may not amend her

complaint through argument in a brief in opposition to summary judgment.").  The proper

method is to amend the complaint, or file a separate contempt motion, not to argue a new cause

of action in an opposition brief.  More specifically, the proper method to enforce compliance

with the *Reynolds* consent decree would be to file a contempt motion in the *Reynolds* case, not a

separate complaint creating a new cause of action, as Lyon did here. *See, e.g., Combs v. Ryan's

Coal Co., Inc.,* 785 F.2d 970 (11th Cir. 1986); *Fed. R. Civ. P.* 71 (procedure for enforcing

against a nonparty is the same as against a party).  Lyon's claim based on violation of the

consent decree, therefore, is also due to be DISMISSED without prejudice, but without leave to

amend.

## C. § 1983 - First Amendment violation of right to protected speech. (Count II)

Lyon's remaining § 1983 claim is that the Defendants violated her First Amendment

rights by placing the "Do Not Re-Hire" sign in her file in retaliation for her participation in the

two grievance proceedings.  A determination of whether a public employee was punished for

exercising her right to freedom of speech involves a four-step analysis:

> 1) the employee's speech must involve a matter of public concern in order for it to
> be protected, 2) the employee's first amendment interests must outweigh the public
> employer's interest in efficiency (the Pickering balancing test), 3) the employee must
> have been disciplined, in substantial part, because of the protected speech, and 4) the

> public employer must not be able to prove beyond a preponderance of the evidence
> that it would have disciplined the employee even without the protected speech.

*Johnson v. Clifton*, 74 F.3d 1087, 1092 (11th Cir. 1996) (*citing Bryson v. City of Waycross*, 888

F.2d 1562, 1565 (11th Cir. 1989)).  In their Motion to Dismiss, the Defendants challenged

Lyon's claim on two bases.  First, the Defendants argue that Lyon's participation in the

employee grievance proceedings was not a matter of "public concern" under the first prong of

the four-step analysis. (Mot. at 11.)  Second, they challenge Lyon's claim on the basis that, even

if her speech were protected, her claim is barred by the two-year statute of limitations. (*Id.* at 11-

12.)  Because it is a threshold issue to whether the court may consider the merits of whether

Lyon's First Amendment rights were violated, the court will first consider the statute of

limitations argument.

i. Statute of Limitations

The statute of limitations applicable to a § 1983 claim in Alabama is the two year general

statute of limitations for personal injuries. *See Owens v. Okure,* 488 U.S. 235 (1989); *Lufkin v.

McCallum*, 956 F.2d 1104, 1106 (11th Cir. 1992); Ala. Code § 6-2-38(l).  "The general federal

rule is that the statute of limitations does not begin to run until the facts which would support a

cause of action are apparent or should be apparent to a person with a reasonably prudent regard

for his rights." *Rozar v. Mullins*, 85 F.3d 556, 561 (11th Cir. 1996).  The Defendants argue that

McInnes's final signature on the "Do Not Rehire" form was dated April 27, 2006, and that

Lyon's final performance appraisal was dated May 24, 2006; therefore, Lyon's complaint, filed

May 28, 2008, is barred by the statute of limitations.  The defendants further argue that, although

Lyon did not discover the unfavorable appraisal and "Do Not Rehire" forms until April 8, 2008,

16

she began interviewing for state jobs in April 2006, and could have discovered those items in

2006 "through the exercise of reasonable diligence." (Mot. at 12.)

In response, Lyon does not address the "reasonable diligence" argument, but instead

argues that although the performance appraisal was signed on May 24, 2006, it was transmitted

and published in her personnel file on May 30, 2006, as reflected by the date-stamp. (Resp. Br. at

19.)  Additionally, Lyon argues, the "Do Not Rehire" form, despite its April date, was similarly

date-stamped June 28, 2006. (*Id.*)  Lyon argues that the creation and signing of the "Do Not

Rehire" and appraisal forms, "while harassing and unjustified – did not impact her future

employment until publishing occurred in [her] personnel file on May 30, 2006, and later in June

2006; therefore, the statute of limitations does not bar her May 28, 2008 claims.

In reply,[6] the Defendants argue that, in describing the publishing of the forms in her

personnel file on May 30, 2006 and June 2006, Lyon refers to actions which were taken by the

State of Alabama Personnel Board, and not by any of the ALDOT defendant employees in this

case; therefore, the actions of the defendants in this case occurred more than two years before the

suit was filed.

This court must therefore make the determination as to when "the facts which would

support a cause of action are apparent or should be apparent to a person with a reasonably

prudent regard for his rights." *Rozar*, 85 F.3d at 561.  Under the allegations of the complaint,

Lyon could not have known of the adverse performance appraisal until it was placed in her

---

[6] This part of the Defendants' argument in reply is actually couched under the heading,
"Statute of Limitations - *state law claims*." (Reply Br. at 12.) (emphasis added).  It directly
addresses, however, the response arguments made concerning Lyon's § 1983 claims, and the
court considers them to address both sets of claims, despite the misguided heading.

personnel file on May 30, 2006, or of the "Do Not Rehire" until it was placed in her personnel file in June, 2006, even if she had looked at the file earlier. She also alleges that she did not have actual knowledge until June of 2006. Therefore this claim is not barred by the two year statute of limitations.

<u>ii. First Amendment violation - "public concern"</u>

As mentioned above, the Defendants challenge Lyon's claim that her testimony at the grievance hearings were matters of "public concern" under the first prong of the four-part *Bryson* test. "Speech addresses a matter of public concern when the speech can be 'fairly considered as relating to any matter of political, social, or other concern to the community.'" *Fikes v. City of Daphne*, 79 F.3d 1079, 1083 (11th Cir. 1996) (*quoting Connick v. Myers*, 461 U.S. 138 (1983)).

"Whether the plaintiff's speech addressed a matter of public concern depends upon the content, form and context of the statement considered in light of the entire record." *Martinez v. City of Opa-Locka,* 971 F.2d 708, 712 (11th Cir. 1992). Whether speech involves a matter of public concern is a question of law, not fact. *Gonzalez v. Lee Cty. Hous. Auth.*, 161 F.3d 1290, 1297 (11th Cir. 1998) (*citing Connick v. Myers*, 461 U.S. 138 (1983)). If a government employee speaks "not as a citizen upon matters of public concern, but instead as an employee upon matters only of personal interest, absent the most unusual circumstances, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior." *Connick,* 461 U.S. at 147. Because "[a]n employee's speech will rarely be entirely private or entirely public," a court must "consider whether the speech at issue was made primarily in the employee's role as citizen, or primarily in the role of employee." *Morgan*, 6 F.3d at 755.

18

Matters held in the past by the Eleventh Circuit to involve public concern have included the provision of emergency services, criticism of a public institution's funding decisions, whether firefighters are receiving adequate training, and concerns over the closing of a firehouse and the transition from a volunteer to a paid firefighter service. *Fikes*, 79 F.3d at 1084; *Kurtz v. Vickrey*, 855 F.2d 723, 729-30 (11th Cir. 1988); *Beckwith v. City of Daytona Beach Shores*, 58 F.3d 1554, 1557 (11th Cir. 1995); *Rodin v. City of Coral Springs*, 229 Fed. Appx. 849, 857 (11th Cir. April 26, 2007).   Matters held not to be a matter of public concern include an employee's personal sexual harassment complaint, statements denying responsibility for the uncleanliness of bathrooms, and threats to disclose sexual harassment by a former supervisor unless given monetary payments. *Morgan v. Ford*, 6 F.3d 750 (11th Cir. 1993); *Pearson v. Macon-Bibb County Hosp. Auth.,* 952 F.2d 1274 (11th Cir. 1992); *Deremo v. Watkins*, 939 F.2d 908 (11th Cir. 1991).

Perhaps the most relevant Eleventh Circuit case, however, is *Maggio v. Sipple*, 211 F.3d 1346 (11th Cir. 2000).  In *Maggio*, the plaintiff testified "on behalf of her supervisor at a hearing relating to a grievance her supervisor filed after being charged with insubordination and at a hearing relating to her supervisor's administrative appeal of [the supervisor's] termination." *Id.* at 1352-53.  The plaintiff alleged, among other things, that the agency and its employees retaliated against her because of her testimony.  In her complaint, the plaintiff alleged that her testimony "did not involve matters of [plaintiff's] personal interest, but were . . . matters of public concern in that they related to the fair and honest implementation of the [agency's] personnel policies and the rights to redress complaints through appeal procedures established by the [agency]." *Id.* at 1349 (*quoting Maggio* Pl.'s Compl. ¶ 21).

*Maggio* found the plaintiff's testimony to be much like the personal sexual harassment testimony previously held in *Morgan* not to be a matter of public concern. *Id.* at 1352 (*citing Morgan*, 6 F.3d 750 (11th Cir. 1993). "The mere fact that the topic of the employee's speech was one in which the public might or would have had a great interest," was less relevant, the court held, than "whether the purpose of the [the plaintiff's] speech was to raise issues of public concern . . . or to further her own private interest. *Id.* (*quoting Morgan*, 6 F.3d at 754). While the *Morgan* plaintiff's speech about the harassment of her co-worker "contained a public concern aspect," the *Morgan* court found that "the main thrust of [the plaintiff's] speech took the form of a private employee grievance." *Id.* (*quoting Morgan*, 6 F.3d at 755).

In analyzing the *Maggio* plaintiff's speech, the Eleventh Circuit noted that the speech occurred in the same private type of administrative hearing as in *Morgan* and was directed at the "same type of official administrative bodies . . ."and thus the plaintiff "did not relate her concerns about sexual harassment to the public." *Id.* at 1353. Moreover, the fact that Maggio was testifying on behalf of someone other than herself was not dispositive:

> Maggio does not allege that her testimony at her supervisor's hearings was about any fraud or corruption in [the agency's] implementation of its personnel policies and appeal procedures either in general or in [her supervisor's] case in particular. Much like the speech in *Morgan*, the primary purpose of Maggio's testimony appears to have been to support an employee's private grievance – her supervisor's effort to have her insubordination charge overturned and to be reinstated after her termination . . . Moreover, as in *Morgan*, the fact that Maggio was testifying in another employee's grievance proceedings, rather than her own grievance, does not automatically establish that Maggio's speech involved a matter of public concern. *See Morgan*, 6 F.3d at 755 (noting that part of the plaintiff's speech in issue was "about her co-worker's plight").

20

*Id.*  The *Maggio* court then distinguished another case, in which the plaintiff employee had executed an affidavit in a race and sex discrimination lawsuit in federal court, by the fact that an administrative grievance hearing, unlike a federal court, was not a public forum. *Id.* at 1353-54.

This court finds Lyon's speech to be much like the private grievance speech in *Maggio*, and not a matter of public interest.  As in *Maggio* and *Morgan*, Lyon's testimony was in the context of two private administrative grievance hearings, not a public forum.  Both Lyon's grievance and Lee's grievance were against the same defendant, Hall. (Compl. ¶ 11.)  In *Maggio*, the court held that the plaintiff's self-interests were served by testifying on behalf of her supervisor so as to curry favor with her should the supervisor be reinstated. *Maggio*, 211 F.3d at 1353.  Here, Lyon's self-interests were served by testifying against the same individual against whom she herself had filed a grievance.  Moreover, Lyon's complaint even alleges that she was motivated to testify at the grievance hearing, not because she was concerned about the policies and procedures at ALDOT, or because she wanted to foster a public debate about obstacles to the ALDOT's service to the public, but rather because she "understood [a subpoena] as requiring her presence . . . ." (Compl. ¶ 14.); *see also id.* ¶ 14 ("Plaintiff advised Defendant Ashurst that she had been subpoenaed and that she felt that she would be required to attend the hearing.").

For these reasons, this court finds that, despite taking as true all of Lyon's allegations as required when considering a motion to dismiss, the "main thrust" of Lyon's speech does not involve a matter of "public concern," and therefore is not speech protected by the First Amendment.  Accordingly, Lyon's § 1983 claim for violation of her First Amendment rights is due to be DISMISSED with prejudice for failure to state a claim.

**D. State law claims - defamation (Count III), tort of outrageous conduct (Count IV).**

i. Defamation claim

       Lyon's defamation claim, which is the subject of Count III, is based solely on the placement of the "Mental Ward" sign by Ashurst.  Lyon concedes in her response brief, however, that this claim is time-barred. (Resp. Br. at 9.)  In response to the motion to dismiss, Lyon refers to the performance appraisal and the "Do Not Rehire" forms in the personnel file, but the Complaint contains no defamation claim based on those forms.  Therefore, the Motion to Dismiss is due to be GRANTED as to Lyon's state law defamation claim.

ii. Outrageous conduct

       Count IV of Lyon's complaint alleges the tort of outrageous conduct.  It broadly alleges that "[t]he actions of the Defendants Hall, Ashurst, Estes, Graham, and McInnes, individually and jointly, are so shocking as to be outrageous to an ordinary person of reasonable intelligence and are so outside the realm of reasonable conduct in an employment setting . . . as to be actionable under the tort of outrage." (Compl. ¶ 52.)  It further calls them "willful, malicious, wanton and intentional . . . shocking to the conscious [sic] and intended to emotionally impact the Plaintiff mentally." (*Id.* ¶ 53.)  At no point in Count IV, however, does Lyon allege what those actions are.

       Because of the numerous facts and events alleged in Plaintiff's case, some of which are time-barred, such as the placement of the "MENTAL WARD" sign, Plaintiff's allegations do not constitute "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  Count IV of Lyon's Complaint makes no effort to state or reference which of Defendants' actions entitle them to relief under a claim of outrageous conduct.

Without any factual basis alleged for this claim, aside from merely incorporating the entirety of the previous paragraphs of the Complaint, this court is unable to decide whether the Defendants' actions as alleged, if proved, sufficiently state a claim under the tort of outrageous conduct upon which relief can be granted. Lyon's claim is therefore due to be DISMISSED for failure to state a claim for relief, without prejudice, with leave to amend.

## CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1. The Defendants' Motion to Dismiss is GRANTED, as to Plaintiff's conceded claims: all § 1983 claims based on the Fourth, Fifth, Seventh, or Fourteenth Amendments (Count II), all state invasion of privacy claims premised upon posting of the "Mental Ward" sign (Count II), all claims against Defendants in their official capacities, and all state constitutional claims contained in Count V. The aforementioned claims are DISMISSED with prejudice.

2. The Defendants' Motion to Dismiss is GRANTED with respect to Plaintiff's claim of violation of a federal consent decree (Count I). Plaintiff's claim is DISMISSED without prejudice, but also without leave to amend.

3. The Defendants' Motion to Dismiss is GRANTED with respect to the Plaintiff's federal claims under 42 U.S.C. § 1983 for violation of her First Amendment rights (Count II), and those claims are hereby DISMISSED with prejudice.

4. The Defendant's Motion to Dismiss is GRANTED with respect to the Plaintiff's 42 U.S.C. § 1985 claim (Count I), and that claim is DISMISSED without prejudice, with leave to amend.

5. The Plaintiff's state law claim of defamation (Count III) is hereby DISMISSED with prejudice.

6. The Plaintiff's state law claim of outrageous conduct (Count IV) is DISMISSED without prejudice, with leave to amend.

7. The Plaintiff is given until August 22, 2008 to amend her complaint in accordance with this memorandum opinion and order, to the extent that she may wish to do so.  Any Amended Complaint must "reproduce the entire pleading as amended, and . . . not incorporate any prior pleading by reference." M.D. Ala. Local Rule 15.1.


DONE this 13th day of August, 2008.


/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE