IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| MARY K. LYON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CIVIL ACTION NO. 2:08cv394-WHA |
| | ) | |
| WILLIAM ASHURST, et al., | ) | (WO) |
| | ) | |
| Defendants. | ) | |

### **MEMORANDUM OPINION AND ORDER**

### **I. INTRODUCTION**

This cause is before the court on a Motion to Dismiss Amended Complaint (Doc. #22 ) filed by Defendants Joe McInnes ("McInnes"), Randall Estes ("Estes"), William Robert Ashurst ("Ashurst") and John Thomas Hall ("Hall"), (collectively "Defendants"),[1] on September 8, 2008.

The Plaintiff, Mary K. Lyon ("Lyon"), originally filed a Complaint against the Defendants on May 28, 2008, bringing various claims based on alleged retaliation for her filing of a grievance, and for her testimony in a co-worker's grievance hearing. On June 23, 2008, the

---

[1] Another defendant, Jackie Graham ("Graham"), was named as a defendant in the original complaint filed in this case. The Amended Complaint, however, does not list Graham in the caption or in "Parties" section, which specifically names each of the moving defendants and their positions with ALDOT. It contains one factual allegation against Graham in the facts, and refers to "Defendant Graham" at various times, but at other times refers to her but not as a "defendant." It appears that Graham is not a defendant in the Amended Complaint. Thus, when referring to "Defendants," the court is not including Graham, who has not moved for dismissal with Defendants Ashurst, Hall, Estes and McInnes. The court will refer to Graham specifically where appropriate. *See infra* note 5.

1

Defendants filed a Motion to Dismiss (Doc. #9).  On August 13, 2008, the court dismissed each of the Plaintiff's six counts against the Defendants (Doc. #18).  The Plaintiff was given until August 22, 2008 to amend her Complaint in accordance with the August 13, 2008 Order.

On August 22, 2008, the Plaintiff filed an Amended Complaint, asserting federal claims under 42 U.S.C. § 1985(2) and 42 U.S.C. § 1985(3), and a state law claim of outrageous conduct.

For reasons to be discussed, the Motion to Dismiss is due to be GRANTED.

## II.  MOTION TO DISMISS STANDARD

The court accepts the plaintiff's allegations as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), and construes the complaint in the plaintiff's favor, *Duke v. Cleland*, 5 F.3d 1399, 1402 (11th Cir. 1993).  To survive a motion to dismiss, a complaint need not contain "detailed factual allegations." *Bell Atlantic Corp. v. Twombly*, __ U.S. __, 127 S.Ct. 1955 (2007).  The complaint must contain "only enough facts to state a claim to relief that is plausible on its face." *Id.* at 1974.  The factual allegations  "must be enough to raise a right to relief above the speculative level." *Id*. at 1965.  "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* at 1964-65.

## III.  FACTS

The allegations of the Plaintiff's Amended Complaint are as follows:

On or about February 5, 2005, Lyon was hired as an Administrative Support Assistant II for Ashurst, a Section Engineer and Supervisor of the Right-of-Way Section of the Alabama Department of Transportation ("ALDOT").  Ashurst also supervised Hall, one of Lyon's co-workers who, in turn, supervised other employees within Lyon's shared office space.

2

On or about December 22, 2005, an incident occurred between Lyon and Hall, and, as a result of that incident, Lyon filed a grievance against Hall for violence in the workplace. The next day, Ashurst called Lyon into his office and told her that she "was out of line and needed to chill" concerning the incident with Hall the previous day. (Amended Compl. ¶ 18.) Later that morning, Lyon was given her mid-appraisal performance review, but no rating or appraisal score was given to her at that time. A previous appraisal, given at the end of her probationary period on July 28, 2005, had rated her a 32.5 for responsibility, reflecting her work as "Exceeds Standards," and rating her "Satisfactory" in attendance, punctuality, cooperation with co-workers and compliance with the rules. The probationary appraisal also noted that Lyon had not received any warnings, reprimands or suspensions as of the end of her probationary period.

On or before the date Lyon filed her grievance against Hall with the Division's Equal Employment Opportunity ("EEO") representative, another employee in her division, Ms. Linda Lee ("Lee"), also filed a grievance against Hall for age and sex discrimination. Lyon was subpoenaed as a witness for Lee's administrative hearing. When Ashurst learned that Lyon had been subpoenaed, he called Lyon into his office and attempted to persuade her not to testify or answer the subpoena. Ashurst told her that he and Hall would both "really appreciate it if she did not attend the hearing," and would "consider it a personal favor." (Amended Compl. ¶ 20.) He further advised her that he had checked it out, and that she was not legally obligated to go to the hearing. Lyon replied that she had been subpoenaed, and that she felt required to attend. Lyon alleges that she feared, from the tone of Ashurst's voice, that he would retaliate if she complied with the subpoena. That same week, an ALDOT attorney telephoned Lyon at work, explained that she was an attorney for the Lee hearing, and attempted to dissuade Lyon from

attending the hearing.

On or about January 20, 2006, after learning of Lyon's grievance and of the subpoena, Ashurst affixed to the outside of his office door, facing the hallway, a framed sign that stated in all capital letters, "MENTAL WARD." As Lyon passed a group of male co-workers, "she heard them chuckling and snickering as Ashurst told them that the 'powers that be' ha[d] told him that he might get into trouble" for affixing such a sign to his hallway door. (Amended Compl. ¶ 21.) Ashurst then removed the sign and relocated it in his window sill pointing outward into the hallway, so that passersby could still see the sign through his office window glass. Plaintiff believes the sign was placed there by Ashurst because he knew that she had earlier sought counseling through the EAP, and attempted to discredit and intimidate her.

On or about January 31, 2006, Lyon attended the Lee hearing. When she arrived, she was told, without prior notice, that her own grievance was being combined with Lee's, and that she would have to testify as to Lee's grievance and her own grievance on that same day. Due to the lack of prior notice, Lyon was unprepared. At the hearing, Lee testified that Hall treated women differently than men. Both Lyon and Lee testified to being verbally berated and intimidated by Hall on occasion. The hearing officer at the grievance proceedings issued an order cautioning against retaliatory action being taken against any of the witnesses to the case.

On February 7, 2006, Estes, Section Supervisor of Ashurst, met with Ashurst and Hall in Ashurst's office. In that meeting, Hall angrily kicked a chair after receiving what Hall perceived as a verbal reprimand from Estes for his conduct during the Decemeber, 2005 incident involving Lyon. As Estes attempted to calm Hall down, Lyon overheard him say, "I don't make the rules." (Amended Compl.¶ 24). About one day later, Lyon overheard Hall ask Canderia Kyser

("Kyser") to begin keeping a list of documentation that could be used against Lyon. The next day, Lyon reported to Doug Furlough, the EEO representative, that she was unable to report incidents of harassment to her supervisor, Ashurst, because of his participation in those incidents, and asked him if she could report to another supervisor or directly to the ALDOT main office. She further informed Furlough of the comment between Hall and Kyser. The next day, on or about February 10, Furlough spoke with Kyser, after which Kyser informed Lyon that there were "bad, evil spirits in this place." (Amended Compl. ¶ 25). On or about that same day, Ashurst falsely accused Lyon of making a mistake on his leave slip.

From February 23 to February 27, 2006, Lyon took a typing test and a written exam, and spoke with officers in the ALDOT Compliance Office in an attempt to transfer out of her Division into an ASA III position.

On or about March 10, 2006, Ashurst issued Lyon a written reprimand, her first during her thirteen-month employment period as his secretary, for minor infractions, including incidents that had occurred over two months before. Lyon was then advised that further disciplinary actions could include suspension or termination. Lyon was upset by the reprimand, and requested a leave slip, which Ashurst granted.

On or about March 27, 2006, Lyon turned in a two-week notice of resignation, citing health problems that would require more recovery time than her remaining accumulated leave. On or around March 30, 2006, Lyon was diagnosed with a hernia, which she attributes to the December 2005 incident with Hall. Lyon filed a workmen's compensation claim on or around April 3, 2006, which was denied.

On April 13, 2006, one day prior to Lyon's scheduled last day of work, Ashurst came to

her desk, appeared angry, and told her that there was no reason for her to come into work the next day. He told Lyon that as soon as she cleaned out her desk she was not to return.

On April 20, 2006, Ashurst sent a memo to Estes, requesting that Lyon's personnel file be marked "Do Not Re-Hire," stating as grounds Mrs. Lyon's "disruptive, argumentative, and confrontational behavior. She definitely was not an asset to the work force." Subsequently, an Employee Performance Appraisal ("performance appraisal"), purportedly covering the period from June 1, 2005 to June 1, 2006, was submitted with Ashurst's signature, dated May 23, 2006. Estes, the reviewing supervisor, signed and dated the form May 24, 2006. The appraisal itself was date-stamped May 30, 2006. The appraisal resulted in an 11.8 appraisal score, indicated that she "[p]artially meets standards" with respect to her "Work Section," indicated "satisfactory" on attendance and punctuality, and "unsatisfactory" on "cooperation with co-workers and compliance with the Rules." Moreover, a recommendation for personnel action dated April 14, 2006 and filed June 28, 2006 by the State Personnel Department stated, "Not Recommended for Re-Hire Due to Disruptive Behavior Issues," and was approved by "all levels." The form ("'Do Not Hire' classification") was signed by Estes, the appointing authority McInnes, and ALDOT Personnel Director Graham.

After leaving her job with ALDOT, Lyon interviewed for approximately fifteen jobs with the State of Alabama. In June 2006, she was turned down for the ASA III transfer, and learned that it was because she was considered a "Do Not Rehire." Lyon called the State Personnel Department and was informed that the only way to change this classification in her file was to convince her past supervisor to change it. When she contacted Ashurst for this purpose, he told Lyon that she didn't work there anymore and that he didn't have to talk to her. Lyon then called

the ALDOT Personnel Department to request advice on how to alter her "Do Not Rehire" classification, and the secretary there told Lyon to document the call. It wasn't until April 3, 2008 that Lyon discovered she could look into her file, after job interviewers with the Alabama Medicaid Agency informed her that she was allowed to do so. On April 8, 2008, Lyon filed a letter of response to the May 30, 2006 unsatisfactory performance appraisal.

Lyon alleges that her failure to be hired by numerous state agencies is a direct result of retaliatory actions taken against her by the Defendants in placing the "Do Not Rehire" classification and negative performance appraisal in her file. She alleges that the Defendants retaliated against her because she filed a grievance and testified in the Lee hearing. Lyon further alleges that the grievance procedures that she followed were formulated pursuant to a Court Order in *Reynolds v. ALDOT*, 2:08-cv-665-MHT, and by retaliating against her for filing a grievance and for testifying in the Lee grievance hearing, the Defendants violated the Consent Order in that case.[2]

## IV. DISCUSSION

Of Lyon's originally alleged claims, the following remain: 42 U.S.C. § 1985 (2) and (3) (Count I) and the state law tort of outrageous conduct (Count II). The court will address the claims in turn.

---

[2]The Plaintiff's claim for violation of the court order was dismissed without prejudice and without leave to amend in the court's August 13, 2008 Order, stating "the proper method to enforce compliance with the *Reynolds* consent degree would be to file a contempt motion in the *Reynolds* case, not a separate complaint stating a new cause of action . . . ." Nevertheless, the Plaintiff appears to reassert the basis for this claim in paragraphs 40-41 of the fact section of the Amended Complaint. Because Lyon does not raise the claim under either of the counts in the Amended Complaint, the court construes the Amended Complaint to not include the claim. If, however, Lyon intended to reassert the claim, the court finds no occasion to reconsider its previous Order.

**A.     Federal law claims under §§ 1985(2) and 1985(3)**

Lyon asserts a claims under 42 U.S.C. § 1985 which prohibits conspiracies to interfere with civil rights. Title 42 U.S.C. § 1985(2) contains two parts.[3] The second part of § 1985(2) prohibits two or more persons from conspiring "for the purpose of impeding, hindering, obstructing or defeating in any manner, the due course of justice in any State or Territory, with intent to deny any citizen the equal protection of the laws . . . ." The elements of a cause of action under § 1985(3) are "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States." *Denny v. City of Albany*, 247 F.3d 1172, 1190 (11th Cir. 2001) (citing *Lucero v. Operation Rescue*, 954 F.2d 624, 627 (11th Cir.1992)).

For a private conspiracy to be actionable under the equal protection language of § 1985 (2) or (3), there must be an allegation of a racial or otherwise class-based invidious discriminatory motivation behind the conspiracy. *See Griffin v. Breckenridge*, 403 U.S. 88, 101-02 (1971) (holding § 1985(3)'s claims require allegations of racial or class based animus); *Kimball v. D.J. McDuffy, Inc.,* 648 F.2d 340 (11th Cir. 1981) (en banc), *cert denied* 454 U.S. 1110 (1981) (applying *Griffin*'s racial or class based animus requirement to § 1985 (2) claims).

---

[3] Part one of § 1985(2) prohibits conspiracy to deter, by force, intimidation, or threat, any party or witness in any court of the United States from attending or testifying in such court. 42 U.S.C. § 1985(2). This court dismissed Lyon's claim under the first part of § 1985(2) in its August 13, 2008 Order, finding that Lyon failed to state a claim under the first part of § 1985(2) because an administrative commission hearing is not a court of the United States. Therefore, the court construes the Amended Complaint as only raising a claim under the second part of § 1985(2), or, in the alternative, finds no occasion to reconsider its August 13, 2008 Order.

In its August 13, 2008 Order, this court noted that Lyon had failed to make allegations "beyond the speculative level" that the Defendants possessed a racial or class-based animus and, therefore, failed to satisfy the standard set forth in *Twombly*, 127 S.Ct. At 1965. The court held Lyon's allegations that both she and her co-worker Lee are members of a protected class were insufficient to survive a motion to dismiss where Lyon never alleged in the Complaint that the purported conspiracy between the Defendants was motivated by class-based animus.

In the Motion to Dismiss the Amended Complaint, the Defendants correctly point out that Lyon has again failed to plead facts supporting an inference that the conspiracy was motivated by invidiously discriminatory animus. In the Response Brief, Lyon points to several paragraphs she believes allege "sufficient class based gender animus underlying the Defendants' actions." Specifically, Lyon again points to allegations that she and her co-employee, Lee, are females, and members of a protected class. Further, she notes allegations that both Lyon and Lee were mistreated by Hall on the basis of their sex. She also references Ashurt's attempts to dissuade her from testifying at the hearing on Lee's allegations against Hall, though does not allege that Ashurt acted with class-based animus in taking this or any other action[4]

Though Lyon makes allegations regarding Defendant Hall's animus towards two specific women, Lyon and Lee, the Amended Complaint makes no allegation, nor justifies any inference, that the alleged conspiracy as a whole was motivated by class-based animus. It is not enough to

---

[4]Lyon also points to her allegation that female employees were subjected to a hostile work environment and denied equal protection in the hearing process. It is not clear who was responsible for the hostile work environment and the deprivation of equal protection rights, but whoever was involved, these allegations are merely "labels" or "conclusions" and do not satisfy *Twombly*'s requirement that allegations "go beyond the speculative level." *See Twombly,* 127 S.Ct. at 1964-65.

allege that some discrimination actions have been taken against particular members of a protected class by one member of the alleged conspiracy without alleging class-based discrimination as a motive for the conspiracy's actions.

Here, there is no allegation that the "Do Not Rehire" designation and final appraisal given to Lyon were the result of a conspiracy motivated by class-based animus.  It is particularly difficult to infer that the alleged conspiracy was motivated by class-based animus from Lyon's allegations regarding Hall where Lyon has not alleged Hall's involvement in the conspiracy to retaliate against her by labeling her a "Do Not Rehire" or in giving Lyon a negative final appraisal.  Nowhere in the Amended Complaint is it alleged Hall was aware that the notice had been generated, nor is it alleged that the notice was placed in her filed based on his request.  Though the Amended Complaint alleges that nearly one year prior to the date of the "Do Not Rehire" notice Hall was overheard expressing to Ashurst a desire for Lyon to be fired, shortly thereafter Lyon was awarded merit system status and received a raise in pay.  Lyon does not allege that Hall ever made additional requests that adverse action be taken against Lyon, nor that such requests were ever successful.  Lyon has not alleged that Hall, a co-worker,  was in any position of authority over Lyon or had the authority to take administrative action against her without enlisting the help of their superiors.  Lyon has failed to assert that any of the superiors were motivated by class-based animus in drafting or approving the "Do Not Rehire" classification or final appraisal.

The Eleventh Circuit has stated that "the purpose of § 1985 was to stifle serious class-based deprivation of constitutional rights by private parties," and "not to serve a general federal tort law." *Trawinski v. United Technologies,* 313 F.3d 1295 (11th Cir. 2002).  Therefore, it is

necessary that § 1985 plaintiffs plead invidiously discriminatory intent behind the alleged conspiracy. Lyon, despite specific instruction from this court, has again failed to make such an allegation. Accordingly, the Motion to Dismiss the Amended Complaint is due to be granted and Count I is due to be dismissed with prejudice.[5]

**B.     State law claim of outrageous conduct**

The Defendants request that this court decline to exercise supplemental jurisdiction over Lyon's state law claim of outrageous conduct against the Defendants in their individual capacities.[6]

Although the court has supplemental jurisdiction over the remaining outrageous conduct claim against the Defendants pursuant to 28 U.S.C. § 1367(a), the court may decline to exercise its jurisdiction if all the federal claims are dismissed. 28 U.S.C. § 1367(c)(3). Further, the Eleventh Circuit has noted that where federal claims are dismissed prior to trial, *United Mine Worker's v. Gibbs*, 383 U.S. 715 (1966), "strongly encourages or even requires" the dismissal of state claims. *Mergens v. Dreyfoos*, 166 F.3d 1114, 1119 (11th Cir. 1999) (citing *L.A. Draper & Son v. Wheelabrator-Frye, Inc.*, 735 F.2d 414, 428 (11th Cir. 1985). Because the court has determined that all the federal claims are due to be dismissed, the court declines to exercise

---

[5] As discussed in footnote 1, the court does not consider Graham to be a defendant under the Amended Complaint, but if she were, she would also be due dismissal for the above reasons. The only specific act allegedly taken by Graham was that she, as Personnel Director, signed off on the "Do Not Rehire" classification, and there is no allegation that she was motivated by class-based animus. So, when the term "all Defendants" is used in the Order and in the Final Judgment, that term includes Jackie Graham to the extent that the Amended Complaint might be construed as including Graham.

[6] The court previously dismissed the claims against the Defendants in their official capacities in its August 13, 2008 Order.

11

jurisdiction over the remaining state law claim, and Count II is due to be dismissed without prejudice.

## V. CONCLUSION

For the foregoing reasons, it is hereby ORDERED that:

1.  The Defendants' Motion to Dismiss is GRANTED with respect to the Plaintiff's 42 U.S.C. § 1985(2) and (3) claims (Count I), and those claims are DISMISSED with prejudice as to all Defendants.

2.  The state law claim of outrageous conduct is DISMISSED without prejudice.

Done this 30th day of October, 2008.

/s/ W. Harold Albritton
W. HAROLD ALBRITTON
SENIOR UNITED STATES DISTRICT JUDGE